UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARVIN W. SCHIFFNER,                    )       No. CV-06-0231-AAM
                                        )
                Plaintiff,              )       **ORDER GRANTING**
                                        )       **DEFENDANT'S MOTION**
v.                                      )       **FOR SUMMARY JUDGMENT,**
                                        )       ***INTER ALIA***
MICHAEL J. ASTRUE, Commissioner         )
of Social Security,                     )
                                        )
                Defendant.              )
_____ )

    **BEFORE THE COURT** are plaintiff's motion for summary judgment (Ct. Rec. 11) and the defendant's motion for summary judgment (Ct. Rec. 14).

## JURISDICTION

    Marvin W. Schiffner, plaintiff, applied for Supplemental Security Income benefits ("SSI") on December 22, 2003.  The application was denied initially and on reconsideration.  Plaintiff, represented by counsel, then appeared and testified before Administrative Law Judge ("ALJ") Mary Bennett Reed on October 25, 2005.  Neuropsychologist Allen D. Bostwick, Ph.D., testified as a medical advisor/ expert.  Tom L. Moreland testified as a vocational expert.  On January 27, 2006, the ALJ issued a decision denying benefits.  The Appeals Council denied a request for review and the ALJ's decision became the final decision of the Commissioner. This decision is appealable to district court pursuant to 42 U.S.C. § 405(g).

**ORDER GRANTING DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT, *INTER ALIA*-**    **1**

1

**STATEMENT OF FACTS**

2    The facts have been presented in the administrative transcript, the ALJ's

3    decision, the plaintiff's and defendant's briefs, and will only be summarized here.

4    At the time of the hearing, plaintiff was 47 years old.  He has a high school

5    education plus two years of education beyond that.  He does not have any past relevant

6    work experience.  Plaintiff alleges disability since December 19, 2003, due to

7    musculoskeletal and mental impairments.

8

9    **STANDARD OF REVIEW**

10    "The [Commissioner's] determination that a claimant is not disabled will be

11    upheld if the findings of fact are supported by substantial evidence, 42 U.S.C.

12    § 405(g)...."  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983).

13    Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d

14    1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*,

15    888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human*

16    *Services*, 846 F.2d 573, 576 (9th Cir. 1988).  "It means such relevant evidence as a

17    reasonable mind might accept as adequate to support a conclusion."  *Richardson v.*

18    *Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971).  "[S]uch inferences and conclusions

19    as the [Commissioner] may reasonably draw from the evidence" will also be upheld.

20    *Beane v. Richardson*, 457 F.2d 758, 759 (9th Cir. 1972); *Mark v. Celebrezze*, 348 F.2d

21    289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not

22    just the evidence supporting the decision of the Commissioner.  *Weetman v. Sullivan*,

23    877 F.2d 20, 22 (9th Cir. 1989), quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th

24    Cir. 1980); *Thompson v. Schweiker*, 665 F.2d 936, 939 (9th Cir. 1982).

25    It is the role of the trier of fact, not this court to resolve conflicts in evidence.

26    *Richardson*, 402 U.S. at 400.  If evidence supports more than one rational

27    interpretation, the court must uphold the decision of the ALJ.  *Allen v. Heckler*, 749

28    F.2d 577, 579 (9th Cir. 1984).

**ORDER GRANTING DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT, *INTER ALIA*-        2**

1  A decision supported by substantial evidence will still be set aside if the proper
2  legal standards were not applied in weighing the evidence and making the decision.
3  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir.
4  1987).

5

6  **ISSUES**

7  Plaintiff argues the ALJ erred in: 1) failing to have a medical advisor testify as
8  to his musculoskeletal impairments; 2) failing to properly consider his pain
9  complaints; 3) failing to properly determine his residual functional capacity; 4) finding
10  he lacked credibility; and 5) failing to pose an accurate hypothetical question to the
11  vocational expert

12

13  **DISCUSSION**
14  **SEQUENTIAL EVALUATION PROCESS**

15  The Social Security Act defines "disability" as the "inability to engage in any
16  substantial gainful activity by reason of any medically determinable physical or mental
17  impairment which can be expected to result in death or which has lasted or can be
18  expected to last for a continuous period of not less than twelve months." 42 U.S.C.
19  § 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be
20  under a disability only if his impairments are of such severity that the claimant is not
21  only unable to do his previous work but cannot, considering his age, education and
22  work experiences, engage in any other substantial gainful work which exists in the
23  national economy. *Id*.

24  The Commissioner has established a five-step sequential evaluation process for
25  determining whether a person is disabled. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482
26  U.S. 137, 140-42, 107 S.Ct. 2287 (1987). Step one determines if he is engaged in
27  substantial gainful activities. If he is, benefits are denied. 20 C.F.R. §
28  416.920(a)(4)(i). If he is not, the decision-maker proceeds to step two, which

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT, *INTER ALIA*-    3**

determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii); 20 C.F.R. § 404 Subpart P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step which determines whether the impairment prevents the claimant from performing work he has performed in the past. If the claimant is able to perform his previous work, he is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant cannot perform this work, the fifth and final step in the process determines whether he is able to perform other work in the national economy in view of his age, education and work experience. 20 C.F.R. § 416.920(a)(4)(v).

The initial burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

The ALJ found that plaintiff has "severe" mental and gastrointestinal impairments, obesity, and mild degenerative disc disease of the lumbar spine. The

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, *INTER ALIA*-    4**

ALJ found, however, that none of these impairments, considered separately or in combination, meet or are medically equivalent to any of the impairments listed in 20 C.F.R. § 404 Subpt. P, App. 1. The ALJ found that plaintiff has the following residual functional capacity (RFC), amounting to a "limited range of light work:"

> [C]laimant's back pain, gastrointestinal impairments, and his obesity preclude his ability to perform work requiring lifting more than 10 pounds frequently or more than 20 pounds occasionally, sitting more than 6 hours in an 8 hour day, standing and/or walking more than 6 hours in an 8 hour day (or throughout a normal workday allowing for normal breaks), or more than occasionally stooping, kneeling, crouching, crawling or climbing ramps or stairs. The claimant's mental impairments markedly limit[] . . . his ability to work with children, and he would be moderately limited in his ability to interact appropriately with the general public, and to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. The claimant was slightly limited in his ability to understand, remember and carry out detailed instructions, to maintain attention and concentration, to perform at a consistent pace, to maintain socially appropriate behavior, and to respond appropriately to complex changes in the work setting.

(Tr. at pp. 25-26).

The ALJ found that plaintiff had no past relevant work, making it necessary to determine whether plaintiff's RFC precluded him from performing other jobs existing in significant numbers in the national economy. Based on the testimony of the vocational expert, the ALJ found that plaintiff's RFC did not preclude him from performing other jobs existing in significant numbers in the national economy and therefore, that plaintiff is not disabled.

**CREDIBILITY/PHYSICAL RESIDUAL FUNCTIONAL CAPACITY**

An ALJ cannot reject a plaintiff's statements about pain and physical restrictions merely because they are not supported by objective evidence. *Tonapeytan v. Halter*, 242 F.3d 1144, 1147-48 (9th Cir. 2001). "In assessing the claimant's credibility, the ALJ may use ordinary techniques of credibility evaluation, such as considering the claimant's reputation for truthfulness and any inconsistent statements in [his] testimony." *Id.* at 1148. See also *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, *INTER ALIA*-    5**

Cir.2002)(following factors may be considered:    1) claimant's reputation for truthfulness; 2) inconsistencies in the claimant's testimony or between his testimony and his conduct; 3) claimant's daily living activities; 4) claimant's work record; and 5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition).  An ALJ must offer clear and convincing reasons for rejecting a claimant's subjective statements about pain and physical restrictions.  *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996).

The ALJ found the plaintiff to not be credible for the following reasons:

> The claimant's testimony concerning his inability to stand or walk for prolonged periods of time due to back pain is not consistent with his ability to stand and walk throughout a normal workday while in prison, without evidence of any exacerbation of his back condition thereafter.  Although the claimant now reports he suffers from debilitating back pain, the claimant did not require medication while in prison, and his Department of Corrections medical records indicate that the claimant did not present with any complaints concerning his back while incarcerated.  Further, the claimant did not present with any complaints of back pain upon his release from prison.  The CHAS Clinic records do not evidence that the claimant complained of, or sought treatment or evaluation for, back pain.  The claimant did report he experienced back pain only when presenting for examination to determine his eligibility for public assistance/GAU[1] benefits.  The claimant demonstrated no significant abnormalities on examination, other than mildly limited range of motion of his back.  The claimant's testimony concerning his functional restrictions is not supported by his activities of daily living, including his ability to walk to the grocery store or to the clothing store, walk around the stores and shop, and walk home, either carrying his purchases or pulling a cart.  The claimant has reported that he walks 20 to 30 minutes a day for exercise, and it was noted that the claimant walked as his primary mode of transportation.  The claimant's testimony concerning his functional restrictions is not consistent with his failure to seek evaluation or treatment for any back condition.  The claimant's testimony concerning his functional restrictions is not supported by the assessment of his primary medical provider or the assessment of the consultative examining orthopedic specialist.

(Tr. at p. 24).

---

[1] General Assistance for the Unemployed.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, *INTER ALIA*-        6**

Plaintiff was incarcerated from 2000 through 2003.  He was released from incarceration in December 2003.  Medical records from the period of his incarceration do not indicate that plaintiff complained of any particular problems with his back for which he was treated or took medication.  (Tr. at pp. 119-134).  A chart note from August 2002 indicates the 5 foot 11 inch tall plaintiff's weight at that time was 306.5 pounds, down from 354 pounds in June 2000.  (Tr. at p. 129).  In February 2004, following his release from incarceration, the plaintiff saw G.W. Bagby, M.D., "relative to his localized low back pain in the process of applying for public assistance." (Tr. at p. 135).  At that time, the plaintiff's weight was reported to be 246 pounds, down from 370 pounds four years ago.  Plaintiff indicated to Dr. Bagby that the last time he saw a doctor for his back was in 1995 following a fall.  According to plaintiff, the onset of his back problems was occasioned by a fall in 1984.  (*Id*.).  Based on his examination of the plaintiff and a review of a radiology report, Dr. Bagby diagnosed plaintiff with "[l]umbar degeneration without neurological involvement," [s]light abnormal curvature of the lumbar spine with transitional segment L5, apparently arthrodesed to the sacrum spontaneously," and "[o]besity contributing to his lumbar problem."  He opined that plaintiff had a "marked" impairment, but was able to do "light" work over a period of six months.[2]  He added that the plaintiff "should concentrate on losing significant weight, approximately 50-60 lb[s]." (Tr. at p. 137).

Defendant began to gain weight following his February 2004 examination by Dr. Bagby.  On a March 29, 2004 visit to Community Health Association of Spokane (CHAS), plaintiff's weight was reported at 328 pounds (Tr. at p. 209); on April 21, 2004, it was reported at 336 pounds  (Tr. at p. 211); on April 30, 2004, it was reported

---

[2]  "Light" work defined as the ability to lift 20 pounds maximum and frequently lift and/or carry up to 10 pounds; may require walking or standing up to six hours out of an eight hour day, or involves sitting most of the time with occasional pushing and pulling of arm and/or leg controls.  (Tr. at p. 141).  This is the definition found in 20 C.F.R. §416.967(b).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, *INTER ALIA*-    7**

at 344 pounds (Tr. at p. 212); on May 19, 2004, it was reported at 344.5 pounds (Tr. at p. 216); on May 28, 2004, it was reported at 348 pounds (Tr. at p. 218); and on subsequent visits during 2004, it was reported at 350 pounds (Tr. at pp. 222, 224, 226, 228 and 234).   According to a CHAS chart note from February 2005, plaintiff indicated his weight had increased to 407 pounds. (Tr. at p. 240).   Other CHAS chart notes from 2005 report plaintiff's weight at 402 pounds.  (Tr. at pp. 241, 247).  During his first visit to CHAS in March 2004, plaintiff's "chief complaint" was back pain and the report from that date indicates that "Marvin is here to have GAU paperwork filled out.  He'd like us to sign attesting that he has been compliant with tx [treatment] plan, though he has never been in our clinic before."  (Tr. at p. 209).  During numerous visits to CHAS between March 2004 and March 2005, back pain was not listed as plaintiff's chief complaint.  The back pain issue, however, arose again in March 2005 when plaintiff was seen for his GAU evaluation:

> Marvin is here for a GAU exam, cites low back pain as his impairment for which he is seeking benefits.  He has had back pain since 1984, when he fell down a flight of stairs.  He was told that he'd eventually have arthritis in the low back, and that there were no surgical options for him.  **Since the initial injury, he has not been seen in the ER or as an inpatient for his back pain.** [H]e had his initial GAU eval (sic) per George Bagby MD a year ago.  Marvin[] has gained considerable weight in the last year (weighed 246 at his eval (sic) in Feb 2004, tells me he weighed 402 last week).

(Tr. at p. 241)(emphasis added).

Patricia Carlson, an ARNP (Advanced Registered Nurse Practitioner) with CHAS, completed a Washington Department of Social and Health Services (DSHS) "Physical Evaluation" on behalf of the plaintiff.  This evaluation, dated March 4, 2005, rated plaintiff's low back pain as "moderate," constituting a significant interference with the ability to perform one or more work-related activities. Nurse Carlson opined that plaintiff was capable of "light" work as defined in 20 C.F.R. §416.967(b).  (Tr. at p. 245).

While plaintiff was incarcerated, he worked in the prison bakery from

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT, *INTER ALIA*-     8**

1    November 2001 through March 2002; he worked as a janitor from March 2002

2    through December 2002; and he worked in the prison laundry from January 2003 to

3    December 2003. (Tr. at p. 71). He indicated that his job in the bakery required him

4    to walk, stand, stoop and reach for eight hours of every work day, as well as handle,

5    grab, or grasp big objects for eight hours of every work day. He further indicated that

6    the heaviest weight he lifted was 20 pounds, although he also indicated that 25 pounds

7    was the weight he frequently lifted. (*Id.*). He also indicated that this job required him

8    to kneel for six hours, crouch for four hours, and write, type, or handle small objects

9    for six hours. (Tr. at p. 83). With regard to his janitorial job, plaintiff indicated that

10   this job required him to walk, stand, stoop, reach, kneel, crouch for eight hours of the

11   work day, as well as write, type or handle small objects for that period of time. He

12   indicated the heaviest weight he lifted was 20 pounds, although here again he

13   indicated that  frequent lifting of 25 pounds was required (Tr. at p. 84). With regard

14   to his laundry job, plaintiff indicated the exertional requirements were the same as the

15   janitorial job, with the exception that there was no writing, typing or handling of small

16   objects. (Tr. at p. 85). At the hearing, plaintiff largely confirmed these were the

17   exertional requirements of these jobs. (Tr. at pp. 315-320).

18       Obesity is a medical determinable impairment often associated with disturbance

19   of the musculoskeletal system. The combined effects of obesity with musculoskeletal

20   impairments can be greater than the effects of each of the impairments considered

21   separately. Accordingly, it is necessary to consider any additional and cumulative

22   effects of obesity. 20 C.F.R. §404 Subpt. P, App. 1, 1.00Q. The record indicates that

23   plaintiff performed prison jobs having exertional requirements equal to or greater than

24   those applicable to "light" work and that he did so while weighing considerably more

25   than the 246 pounds reported by Dr. Bagby in February 2004, shortly after plaintiff's

26   release from incarceration. He weighed 354 pounds in June 2000, 316 pounds in

27   January 2001, 305 pounds in March 2001 (Tr. at p. 121), and 306.5 pounds in August

28   2002 (Tr. at p. 129). Therefore, substantial evidence supports the ALJ's determination

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT, *INTER ALIA*-        9**

that plaintiff's obesity did not diminish his capacity to perform the exertional requirements of "light" work.  Furthermore, the ALJ offered clear and convincing reasons, supported by substantial evidence in the record, to discount the credibility of plaintiff's subjective statements that his pain prevents him from performing the exertional requirements of "light" work.  Indeed, at one point during his hearing before the ALJ, the plaintiff testified that his back problem kept him from performing "heavy manual labor work."  (Tr. at p. 295).

ALJs may ask for and consider opinions from medical experts on the nature and severity of impairments.  20 C.F.R. §416.927(f)(iii).  In this case, there was no reason for the ALJ to ask for such an opinion regarding the nature and severity of plaintiff's musculoskeletal impairment considering the unambiguous and unequivocal opinions of plaintiff's primary medical provider (ARNP Carlson) and the consultative examining orthopedic specialist (Dr. Bagby).  The ALJ was not obligated to develop the record any further by calling a medical advisor to testify about the nature and severity of plaintiff's musculoskeletal impairment.  Substantial evidence supports the ALJ's determination regarding plaintiff's physical residual functional capacity.

//

**MENTAL RESIDUAL FUNCTIONAL CAPACITY/MEDICAL ADVISOR**

The ALJ did call a medical advisor, Dr. Bostwick, to testify about the nature and severity of plaintiff's mental impairments.  The ALJ relied on Dr. Bostwick's testimony in determining that plaintiff's mental impairments resulted in no more than mild restriction of activities in daily living, moderate difficulties in maintaining social functioning, mild deficiencies of concentration, persistence or pace, and no episodes of decompensation.  (Tr. at p. 23).  The ALJ found that Dr. Bostwick "provide[d] specific reasons and persuasive explanations for any disagreements with functional assessments of examining psychologists."  (*Id*.).

The conclusion of a non-examining physician, such as Dr. Bostwick, does not

**ORDER GRANTING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT, *INTER ALIA*-    10**

constitute substantial evidence by itself.  See *Erickson v. Shalala*, 9 F.3d 813, 814 at n. 7 (9th Cir. 1993), and *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990)("The non-examining physician's conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions and conclusions of an examining physician").  In *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995), the Ninth Circuit emphasized, however, that the reports of a non-examining advisor need not be discounted and may serve as substantial evidence when they are supported by other evidence in the record and are consistent with the other evidence.  The opinion of an examining physician is entitled to greater weight than the opinion of a non-examining physician.  The Commissioner must provide "clear and convincing reasons" for rejecting the uncontradicted opinion of an examining physician.  The opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record.  *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)(citations omitted).

Following plaintiff's conviction and the commencement of his incarceration, he underwent a psychological evaluation that indicated he was in the borderline range with regard to cognitive functioning.  (Tr. at p. 119).  Otherwise, there are no mental health records from the period during plaintiff's incarceration.  Upon his release from incarceration, plaintiff was seen in February 2004 by John F. McRae, Ph.D., for a consultative psychological evaluation in connection with his application for GAU benefits.  Dr. McRae noted that plaintiff had never been psychiatrically hospitalized and had never taken medication for depression or anxiety.  Dr. McRae diagnosed plaintiff with pedophilia and dysthymia[3] on Axis I, and with personality disorder traits

---

[3] "Dysthymia" is a form of depression.  *Merck Manual* (17th Ed. 1999) at pp. 1538-39.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, *INTER ALIA*-    11**

and a learning disability regarding arithmetic on Axis II.[4]  According to Dr. McRae:

> I think it is likely that [plaintiff] will be slow at work tasks that involve reading text.  I base this on his slowness in responding to the Beck Inventory II.  Because of his circumstantial speech, I think he would be better off working away from the public and away from coworkers.  I believe he would distract both.  He seems to be capable of carrying out simple work tasks at least.  He appears capable of managing funds despite his difficulties with arithmetic.

(Tr. at p. 146).

Dr. McRae completed a DSHS form assessing plaintiff's cognitive and social limitations.  With regard to cognitive functioning, Dr. McRae opined that plaintiff was moderately limited in his ability to exercise judgment and make decisions, but that otherwise, any limitations were at most mild.  With regard to social functioning, Dr. McRae opined that plaintiff was markedly limited in his ability to relate appropriately to co-workers and supervisors, and interact appropriately in public contacts.  He also indicated that plaintiff was moderately limited in his ability to respond appropriately to and tolerate the pressures and expectations of a normal work setting, and in his ability to control physical or motor movements and maintain appropriate behavior. (Tr. at p. 149).

On April 1, 2005, plaintiff was seen by James E. Bailey, Ph.D., for another consultative psychological evaluation.  Dr. Bailey diagnosed the plaintiff on Axis I with a "[m]athematics disorder" and a "[h]istory of pedophilia."  On Axis II, he diagnosed the plaintiff with "[d]epression, NOS [not otherwise specified]."  He indicated that plaintiff's current Global Assessment of Functioning [GAF] was 50 and

---

[4] Mental disorders diagnosed on Axis I are those that cause the patient significant impairment and are the focus of the patient's treatment.  The exception is personality disorders and mental retardation, which are diagnosed on Axis II. *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, *INTER ALIA*-      12**

that was the highest it had been in the past year.  (Tr. at p. 203).[5]  According to Dr. Bailey:

> His activities of daily living seem mostly independent[,] although he does not drive.  Socially, he has poor vocabulary and limited social skills as seen in the comprehension subtest.  He relates simply to others.  As to concentration and persistence, he is limited to simple work but seems to have trouble picking up visual organizational tasks as seen on block design.  In terms of decompensation, he has had no work or work-like behavior in the past 12 months.

(Tr. at p. 204).

In addition to his narrative report, Dr. Bailey completed a DSHS form offering an assessment of plaintiff's cognitive and social limitations.  With regard to cognitive factors, Dr. Bailey opined that plaintiff was moderately limited in his ability to learn new tasks, and markedly limited in his abilities to exercise judgment and make decisions, and to perform new tasks.  With regard to social factors, Dr. Bailey opined that plaintiff was moderately limited in his abilities to care for himself, including personal hygiene and appearance, and control physical or motor movements and maintain appropriate behavior.  The doctor also opined that plaintiff was markedly limited in his abilities to relate appropriately to co-workers and supervisors, interact appropriately in public contacts, and respond appropriately to and tolerate the pressures and expectations of a normal work setting.  (Tr. at p. 207).

Dr. Bostwick noted that plaintiff fared much better on the intellectual functioning tests performed by Dr. McRae as opposed to those performed by Dr. Bailey.  Based on WAIS-III (Wechsler Adult Intelligence Scale) results, Dr. McRae concluded plaintiff had a full scale IQ of 87, indicating a "low average range of general mental ability," (Tr. at p. 145), whereas based on the results of the WAIS-III

---

[5] A GAF score of 50 means "serious" symptoms or "serious" impairment in either social, occupational, or school functioning.  *American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders*, (4th ed. Text Revision 2000)(DSM-IV-TR).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, *INTER ALIA*-    13**

test he administered to plaintiff, Dr. Bailey concluded plaintiff had a full scale IQ of 81, indicating "borderline range of [intellectual] functioning." (Tr. at p. 202). Both Dr. McRae and Dr. Bailey gave plaintiff the WRAT-III test (Wide Range of Achievement Test), with plaintiff doing better on the test administered by Dr. McRae (higher scores in reading and arithmetic). (Tr. at pp. 145 and 203).

Dr. Bailey also had plaintiff complete the "Structured Inventory of Malingered Symptomatology" which yielded the following results:

> His overall score of 19 would suggest it is significantly elevated above the recommended cut-off score for the identification of suspected malingering. The individual endorsed a high frequency of symptoms that are highly atypical in patients with genuine psychiatric or cognitive disorders[,] raising the suspicion of malingering.

(Tr. at p. 203). Dr. Bostwick concluded that based on this, Dr. Bailey's WAIS-III and WRAT-III results probably underestimated some of plaintiff's actual intellectual abilities and therefore, that Dr. McRae's results were more reliable. Dr. Bostwick also noted that Dr. Bailey apparently did not have Dr. McRae's test results at his disposal. (Tr. at pp. 280 and 286-87). Dr. Bostwick observed that on the DSHS form, Dr. Bailey did not diagnose history of pedophilia and indicated that plaintiff's depression was "mild" as long as the plaintiff was on medication. (Tr. at p. 206). Therefore, Dr. Bostwick opined that the "borderline intellectual functioning" diagnosed by Dr. Bailey was the significant factor in the marked limitations opined by Dr. Bailey with regard to cognitive factors, including abilities to exercise judgment and make decisions, and to perform routine tasks. (Tr. at p. 287). The ALJ noted plaintiff's own testimony that he was reading the newspaper and novels confirmed his ability to read at a high school level as indicated by the WRAT-III testing of both Drs. McRae and Bailey. (Tr. at pp. 25, 145, 203, 293 and 313). The ALJ further noted the plaintiff was capable of communicating and that during the hearing, had related his medical and work history without difficulty. (Tr. at p. 25).

Dr. Bostwick also believed that it was Dr. Bailey's diagnosis of "borderline

**ORDER GRANTING DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT, *INTER ALIA*-      14**

1    intellectual functioning" which led him to opine that plaintiff was moderately limited

2    in two areas of social functioning, and markedly limited in the other three. (Tr. at pp.

3    287-88).  According to Dr. Bostwick:

4               We don't have any objective evidence on cognitive . . .
                limitations, and . . . basically the only social limitations
5               were related by Dr. [McRae] here earlier, and that was
                primarily because the [plaintiff] did tend to be more
6               circumstantial, had difficulty staying on tasks and
                organizing his thoughts then he appeared to have with
7               Dr. Bailey.

8    (Tr. at p. 288).  Dr. Bostwick added that he did not see anything in the CHAS records

9    indicating that plaintiff had social difficulties.  (*Id.*).

10         Plaintiff did not testify as to any social difficulties, at least with regard to adults.

11   (Tr. at p. 304-307; 313-14).  Plaintiff testified that he did not have any particular

12   problems with fellow inmates or the guards while he was incarcerated. (Tr. at p. 314).

13   According to plaintiff, he got along "pretty good" with his co-workers while working

14   in the penal institution. (Tr. at p. 315).  The ALJ correctly noted that plaintiff testified

15   "he did not experience difficulty working with others, interacting with supervisors or

16   the public, using public transportation, or interacting with other residents in his

17   building." (Tr. at p. 25).

18         The ALJ properly relied on Dr. Bostwick whose opinion was supported by

19   substantial evidence in the record.  Dr. Bostwick's opinion constitutes a specific and

20   legitimate reason for rejecting the more serious mental limitations opined by

21   examining physician, Dr. Bailey.  It is true that Dr. McRae, like Dr. Bailey, opined that

22   plaintiff was markedly limited in his ability to relate appropriately to co-workers and

23   supervisors, and in his ability to interact appropriately in public contacts.  The ALJ

24   found that plaintiff was moderately limited in these areas and that was the limitation

25   presented to the vocational expert.  Plaintiff's own testimony concerning his daily

26   activities and his work history while incarcerated, however, constitutes substantial

27   evidence of, at most, a moderate limitation.

28

**ORDER GRANTING DEFENDANT'S MOTION**
**FOR SUMMARY JUDGMENT, *INTER ALIA*-      15**

**VOCATIONAL EXPERT HYPOTHETICAL**

"If a vocational expert's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).

The hypothetical which the ALJ presented to the vocational expert reflected all of the plaintiff's physical and mental limitations found by the ALJ and supported by substantial evidence in the record. (Tr. at pp. 324-25). Based on that hypothetical, the vocational expert testified there were jobs existing in significant numbers in the national and regional economies (cannery worker, assembly worker, laundry worker, agricultural sorter) which plaintiff was capable of performing.  (Tr. at p. 326). Furthermore, the vocational expert testified that none of the jobs identified by him (cannery worker, assembly worker, laundry worker, agricultural sorter) required any interaction with the general public, nor required extensive interaction with co-workers. (Tr. at p. 326).

**CONCLUSION**

Defendant's motion for summary judgment (Ct. Rec. 14) is **GRANTED** and plaintiff's motion for summary judgment (Ct. Rec. 11) is **DENIED**.   The Commissioner's decision denying benefits is **AFFIRMED**.

**IT IS SO ORDERED.**  The District Executive shall enter judgment accordingly and forward copies of the judgment and this order to counsel.

**DATED** this _19th____ of March, 2007.


_s/ Alan A. McDonald_____
ALAN A. McDONALD
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, *INTER ALIA*-      16**